IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERESSA JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:04-cv-1163-F |
| | ) | (WO) |
| STATE OF ALABAMA | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

In this action, Plaintiff Teressa James (hereinafter "James") brings suit against her employer, the State of Alabama Department of Revenue (hereinafter "Department") for alleged race discrimination and retaliation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. (hereinafter "Title VII"). This cause is presently before the Court on Defendant's Motion for Summary Judgment (Doc. # 36) filed on November 30, 2005. The Court has carefully considered the arguments in support of and in opposition to the motion and finds that the motion is due to be GRANTED.

### I. Jurisdiction and Venue

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights) and 42 U.S.C. § 2000(e) to 2000(e)-17 (Title VII). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations of each.

## II.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving

party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)).

### III. Facts and Procedural History

The Court has carefully considered all documents submitted in support of and in opposition to the motion. The submissions of the parties establish the following facts.

James has been employed with the Department since April 2, 1980. She has previously served as a Clerk and a Reproduction Machine Operator and is currently a divisional leave clerk working in the Individual and Corporate Tax Division. James is responsible for the leave records of employees in the Administrative Office of that Division.

In August 1989, James was reassigned from the Remittance Processing Section to the

Records Retention Section. The Department claims that the reassignment was because James was having difficulty operating the equipment in the Remittance Processing Section. James claims she was never notified of any deficiency on her job performance prior to the reassignment. James filed a complaint with the in-house grievance committee concerning this reassignment, then on August 3, 1990, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 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). The charge was resolved through mediation and she was transferred back to the Remittance Processing Section.

On June 30, 1995, James filed a second Charge of Discrimination (Charge No. 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).[1] This Charge alleged that James was being harassed by a co-worker and was receiving unfair evaluations in retaliation for filing the first EEOC Charge. In the Charge, she stated that the most recent occurrence of this discrimination occurred on June 22, 1995. A Right to Sue letter was issued by the EEOC on September 5, 1997 but no further action was taken by James until April 19, 2000, when she filed a *pro se* Complaint in this Court (Case No. 00-T-498-N). In the Complaint, she alleged discriminatory treatment from 1990 to 1997. The court dismissed the Complaint on September 19, 2000 for failure to file the action within 90 days of receipt of the Right to Sue letter.

James filed a third EEOC Charge on November 27, 2003, which she amended on April 26, 2004 (No. 130-04-00307). This Charge alleged retaliation by Charlie Lassiter

---

[1] The charge was amended and re-filed on July 1, 1996.

(hereinafter "Lassiter"), the Director of the Department's Human Resources Division, for filing the two previous EEOC Charges. A Right to Sue Letter was issued by the EEOC on August 31, 2004. The Complaint in the present action was filed on December 2, 2004, alleging both retaliation and race discrimination.

Lassiter, a black female, has been the Director of the Human Resources Division since April 14, 1986. She is responsible for overall management of the time, attendance, and leave records for employees of the Department. Prior to 2003, management of the taking of leave and leave accrual were done on an entirely manual basis. James, as a divisional leave clerk, would prepare time sheets, time and attendance forms, and complete a supplemental payroll to submit to the Human Resources Division for finalization. In 2003, a decision was made to automate the time and attendance processing that was performed by leave clerks. Automation and implementation of the new Leave Tracking System (LTS) began on June 3, 2003. James was trained on the LTS to perform the work of the key leave clerk for the Individual and Corporate Tax Division.

According to the Department, the Human Resources Division had a number of problems with leave reports that were submitted by James. James alleges that on or about July 28, 2003, Lassiter demanded that James perform work that she was not assigned to do and accused her of being incapable of performing her job duties. James further claims that Lassiter then wrote a letter to Richard Henninger (hereinafter "Henninger"), Director of the Individual and Corporate Tax Division, saying that James was incompetent. On August 21, 2003, Lassiter forwarded to Henninger an e-mail describing the problems with James' leave

5

reports and asking Ken Rager (hereinafter "Rager") (who was in charge of implementing LTS) to limit James' access to LTS. Previously, James had been able to view and input leave information for all of the approximately 287 employees in the Individual and Corporate Tax Division. In her e-mail, Lassiter asked Henninger to limit James' access so that she could input leave information only for the Administrative Office staff, which consisted of seven individuals.[2] James was still able to view the leave information of all of the employees in the Division, but could only enter or make changes to the leave information of the Administrative Office staff. Soon after, Henninger briefly reinstated James' access, but later restricted it again. James alleges that this decision to restrict her access was made for discriminatory reasons, while the Department claims the decision was made for legitimate business reasons.

## IV. Discussion

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). In addition, under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). James alleges violations of both of these

---

[2] Due to reorganization, James is now responsible for entering leave information for 20 individuals.

provisions.

In its Motion for Summary Judgement, the Department claims that (1) the allegations in Paragraphs 8 through 13 of the Complaint are untimely; (2) the allegations in Paragraphs 8 through 13 of the Complaint are barred by the doctrine of *res judicata*; and (3) the Department had a legitimate business reason for taking the alleged employment action.

A.    *Statute of Limitations*

The Department first alleges that James failed to timely file her EEOC Charge as to her claims set forth in Paragraphs 8 through 13 of the Complaint.

Title VII requires that, as a prerequisite to bringing suit in a federal court, the individual alleging a Title VII violation must first file a Charge of Discrimination with the EEOC within 180 days of the alleged unlawful action. 42 U.S.C. § 2000e-5(e)(1). The allegations set forth in Paragraphs 8 through 12 of the Complaint pertain to events that allegedly took place from 1990 through 1997. The EEOC Charge was filed on November 27, 2003 and amended on April 26, 2004. Clearly, the Charge was not filed within 180 days of the conduct alleged in Paragraphs 8 through 12. Therefore, the Court will not consider any allegations of discrimination alleged in those Paragraphs.[3]

However, Paragraph 13 alleges harassment "between 1990 & 1997 and until the present." Any alleged harassment between 1990 and 1997 is barred by the statute of limitations, but, to the extent that "until the present" refers to the actions that took place

---

[3] Because the Court has found these allegations to be untimely, the Court need not address the Department's *res judicata* argument.

within the 180 days prior to filing the EEOC Charge, those actions fall within the statute of limitations.[4] In addition, the parties agree that the EEOC Charge and the present suit were timely as to the allegations set forth in Paragraph 14 of the Complaint, which pertain to events that allegedly took place on or about July 28, 2003 and August 21, 2003. Thus, the Court will now address those allegations.

B.   *Race Discrimination*

In her Complaint, James alleges race discrimination in that the Department treated her differently than similarly situated white employees. However, in her EEOC Charge, James only alleges retaliation, not race discrimination.

As a precondition to filing suit in federal court, Title VII requires a plaintiff to exhaust all administrative remedies. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S. Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). If a plaintiff fails to exhaust administrative remedies, the federal court lacks subject matter jurisdiction over the plaintiff's claim. *Randel v. U.S. Dept. of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998). If a plaintiff does not raise a particular claim in her EEOC charge, the plaintiff has failed to exhaust that claim and cannot then raise it in her complaint. That is, the complaint must be within the scope of the EEOC charge and EEOC investigation. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). A claim not raised in the EEOC charge cannot be raised in the complaint unless it is reasonably related to the allegations set forth in the EEOC charge. A claim is deemed to be

---

[4] They are also not barred by *res judicata* because they took place after the *pro se* complaint was filed in 2000.

reasonably related if the claim might reasonably be expected to be considered in a diligent investigation of those issues expressly raised in the EEOC charge or the claim was in fact considered during the EEOC investigation. *Griffin*, 755 F.2d at 1522. Here, a claim of race discrimination was not considered during the EEOC investigation, nor would one expect a claim of race discrimination to be investigated based upon the claims set forth in the EEOC Charge. Thus, this Court lacks subject matter jurisdiction over James' race discrimination claim and summary judgment is due to be granted in favor of the Department on this claim.

C.   *Retaliation*

The burden of proof in a Title VII retaliation case is governed by the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. First, the plaintiff must establish a *prima facie* case of retaliation. To do so, the plaintiff must prove (1) that she engaged in statutorily protected expression; the employer was aware of the activity; (3) that she suffered an adverse employment action; and (4) that there is some causal link between the protected activity and the adverse employment action. *Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999)(*citing Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)). If the plaintiff fails to establish a *prima facie* case of retaliation, summary judgment should be granted in favor of the defendant. *See id.* at 1470. The parties agree that the filing of the first two EEOC Charges constitutes statutorily protected expression and that the Department was aware of the filings. However, the Department claims that restricting James' access to LTS is not an "adverse employment action" and that James has not shown a causal link between the EEOC Charges and the

9

restricted access.

>An adverse employment action is
>
>an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable under the anti-retaliation clause.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)(internal quotation marks and citations omitted). The adverse employment action claimed by James is the restriction on her access to LTS, allowing her to make changes only to the information pertaining to the employees in the Administrative Office. This was not an ultimate employment action because James did not lose her job or suffer a lessening of pay, position, or benefits. *See Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004). Thus, the Court must determine whether it rises to the necessary level of substantiality.

In order to meet the threshold level of substantiality, the employment action must be "objectively serious and tangible enough to alter the employee's compensation, terms, conditions, or privileges of employment." *Gupta*, 212 F.3d at 588. Changes in assignments or work-related duties, unaccompanied by any tangible harm, do not ordinarily constitute adverse employment decisions. *See Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244-45 (11th Cir. 2001). James claims that limiting her ability to make changes to leave records in LTS constituted an adverse employment action. James was only responsible for the leave records of the individuals in the Administrative Office and her ability to make

entries and changes to those records was not restricted. While her ability to make changes to the records of other employees was restricted, this did not significantly effect her job because she was not responsible for the records of those employees. Thus, the only effect the restriction had on her was that, to the extent she noticed mistakes in the records of the other employees, she would be required to report those mistakes to someone who had access to change those records, rather than correct them herself. The Court holds that this change in her employment is insufficient to be considered an adverse employment action, thus James has failed to establish a *prima facie* case of retaliation under Title VII. Therefore, summary judgment is due to be granted in favor of the Department on James' retaliation claim.

## V. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment (Doc. #36) is due to be and is hereby GRANTED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this the 27th day of January, 2006.

                                          /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE